UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Mark Villeneuve,<br>  *Plaintiff*,<br><br>  *v.*<br><br>State of Connecticut, *et al*,<br>  *Defendants*. | Civil No. 3:10cv296 (JBA)<br><br><br><br>December 2, 2010 |

RULING ON MOTIONS

Plaintiff Mark Villeneuve, acting *pro se*, sued the State of Connecticut; Salvatore Dipiano, the head of the Connecticut Statewide Grievance Committee; Attorney Richard Florentine, grievance counsel for the Connecticut Statewide Grievance Committee; Michael Bowler, Bar Counsel for the Connecticut Statewide Grievance Committee; Frances Mickelson–Dera, the Assistant Bar Counsel for the Grievance Committee; Gregory Benoit, another grievance counsel; Patrica King and Mark Dubois, disciplinary counsel for the Connecticut Statewide Grievance Committee; Connecticut Superior Court Judge Julia Aurigemma; Judge Barbara Quinn, the Chief Court Administrator for the Connecticut Judicial Branch; Andrew Norton, Chair of the Connecticut Commission on Human Rights; the Connecticut Statewide Grievance Committee; the Windham Grievance Panel; Connecticut Lieutenant Governor Michael Fedele; Ernesti Mattei, Chair of the Federal Grievance Committee for the District of Connecticut; and the United States for violations of the First, Fifth, and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, and violations of Articles 2 and 18 of the Connecticut Constitution. The State and Federal Defendants have filed separate motions to dismiss, on distinct bases: the State Defendants move under Rules 12(b)(1) and 12(b)(6) and the Federal Defendants move under only Rule 12(b)(6).

Villeneuve has moved for leave to amend his complaint to add one new count claiming that the holding in *Statewide Grievance Committee v. Rozbicki*, 219 Conn. 473, 477 (1991) is unconstitutionally vague.

I. Factual and Procedural Background

Plaintiff is an attorney who was admitted to practice law in the state of Connecticut. He allegedly interviewed in February 2008 for a staff attorney position at the Connecticut Workers Compensation Commission (the "Commission"). (*See New Britain Jud. Dist. v. Villeneuve*, No. 08–0941 (Aug. 21, 2009), Ex. 1 to State Defs.' Mot. [Doc. # 25] at 2.) Sandra Cunningham, the Human Resources Director for the Commission and its Chief Law Clerk interviewed Villeneuve for the job. Afterward, she attempted to verify the information in Villeneuve's resume and discovered that it contained several misrepresentations. (*See id.*) On May 6, 2008, Cunningham initiated a Connecticut state grievance proceeding against Villeneuve, which resulted in Defendant King filing a presentment in Connecticut Superior Court on November 5, 2009, alleging that Villeneuve violated Connecticut Rules of Professional Conduct 8.4(3) and 8.4(4).

On November 24, 2009, Villeneuve moved to dismiss the presentment for lack of subject matter jurisdiction and for summary judgment on the grounds that Rules 8.4(3) and 8.4(4) were unconstitutionally overly broad and void for vagueness. On December 21, 2009, Defendant Superior Court Judge Aurigemma held a hearing on Villeneuve's motions. Villeneuve did not appear, nor did he seek or receive a continuance or permission from the court to be absent. At the end of the hearing, the court denied both motions, on their merits and on account of Villeneuve's failure to appear. On December 22, 2009, Villeneuve filed

another motion to dismiss the presentment, this time claiming that the court lacked personal jurisdiction over him.

On January 22, 2010, while Villeneuve's second motion to dismiss was pending, Judge Aurigemma held a hearing on the presentment, which Villeneuve again did not attend. She suspended Villeneuve from the practice of law "without prejudice because he failed to appear at the presentment." (Jan. 22, 2010 Order, Ex. 5 to State Defs.' Mot.) Judge Aurigemma continued, "[t]he court will consider restatement if [Villeneuve] appears and establishes good cause for his failure to appear at the hearing. The court will not consider the pendency of the (2d) Motion to Dismiss as being good cause. If [Villeneuve] wanted to assert necessity for ruling on that motion before considering the presentment, he should have appeared and could have argued the motion and, possibly, obtained a ruling at that time." (*Id.*) Although Judge Aurigemma did not rule on Villeneuve's second motion to dismiss in suspending him from practicing, she later filed an articulation that "[t]he court denied the Motion to Dismiss . . . on January 22, 2010 when it suspended [Villeneuve]." (Art., Ex. E to Pl.'s Sur–reply.)

Villeneuve appealed Judge Aurigemma's order of suspension on the following grounds:

(1)  That the initial grievance complaint was defective, never should have been accepted and violates [Villeneuve's] rights to due process and equal protection under the law and also which denies the grievance committee and disciplinary counsel standing and the trial court subject matter jurisdiction to consider the matter;

(2)  That [Villeneuve] was denied due process of law when the Windham Grievance Panel made a probable cause determination against the [plaintiff] in violation of Practice Book section 2-32(j)(2) and [Con. Gen. Stat.] § 51-90f(c) and which also denies the grievance

> committee, disciplinary counsel and the trial court standing and subject matter jurisdiction to pursue the grievance against him;
>
> (3) That [Villeneuve] was denied a fair, intelligent and equitable review of the underlying grievance matter pursuant to Practice Book [§] 2-38 which deprives the grievance committee and the trial court of subject matter jurisdiction;
>
> (4) That the trial court lacked personal jurisdiction over [Villeneuve] due to defective service;
>
> (5) That Judge Aurigemma acted in an arbitrary, capricious and biased manner without any jurisdiction in suspending [Villeneuve] while a valid and timely filed motion to dismiss was pending;
>
> (6) That Judge Aurigemma intentionally denied [Villeneuve] the opportunity to respond to the presentment complaint.

(*Disciplinary Counsel v. Villeneuve*, A.C. 31841, Ex. 6 to State Defs.' Mot.)

Villeneuve's appeal remains pending before the Connecticut Appellate Court, and it is the pendency of Plaintiff's appeal that forms one basis of the State Defendants' motion to dismiss.

II. Discussion

The Federal Defendants move to dismiss under Rule 12(b)(6) on the grounds that the federal analogues to the Connecticut Rules of Professional Conduct 8.4(3) and 8.4(4) are not facially unconstitutional. The State Defendants move to dismiss under Rules 12(b)(1)[1]

---

[1] In adjudicating a motion under Rule 12(b)(1) for lack of subject–matter jurisdiction, a court may consider material outside the pleadings, including "by affidavit or otherwise." *Kamen v. Am. Tel & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Reference to outside material, however, should not include "conclusory or hearsay statements contained in the affidavits." *J.S. ex rel N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

4

and 12(b)(6),[2] on the basis that this Court lacks jurisdiction over Villeneuve's federal claims during the pendency of his appeal in state court, under the doctrine established in *Younger v. Harris* that federal courts must abstain from issuing relief impacting a pending state proceeding. 401 U.S. 37 (1971).

      A.      Federal Defendants' Motion to Dismiss

The Federal Defendants move to dismiss Villeneuve's facial constitutional challenges to the federal analogues to Rules 8.4(3) and 8.4(4). Pursuant to Local Rule of Civil Procedure 83.2(a)(1), "this Court recognizes the authority of the 'Rules of Professional Conduct,' as approved by the Judges of the Connecticut Superior Court as expressing the standards of professional conduct expected of lawyers practicing in the District of Connecticut." However, "[t]he interpretation of said Rules of Professional Responsibility by any authority other than the United States Supreme Court, the United States Court of Appeals for the Second Circuit and the United States District Court for the District of Connecticut shall not be binding on disciplinary proceedings initiated in the United States District Court for the District of Connecticut." *Id.* Thus, although Rules 8.4(3) and 8.4(4) governing the conduct of lawyers practicing in federal court set forth in Local Rule 83.2 are substantively the same as the Connecticut Rules of Professional Responsibility, the two sets of rules are distinct and can be interpreted separately by the federal and state courts respectively.

Rule 8.4(3) provides that it is "professional misconduct for a lawyer to . . . [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation." Rule 8.4(4) provides

---

[2] To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))

that it is "professional misconduct for a lawyer to . . . [e]ngage in conduct that is prejudicial to the administration of justice." Both are modeled on and substantively identical to Disciplinary Rules ("DR") 1–102(A)(4) and (5) of the American Bar Association's Model Code of Professional Responsibility.

       *1.     Overbreadth*

The overbreadth "doctrine seeks to strike a balance between competing social costs." *United States v. Williams*, 553 U.S. 285, 292 (2008). On the one hand, "the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas," yet "[o]n the other hand, invalidating a law that in some of its applications is perfectly constitutional . . . has obvious harmful effects." *Id.* Thus, "[i]n order to maintain an appropriate balance, [the Supreme Court] has vigorously enforced the requirement that a statute's overbreadth be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* (emphasis in original).

The first step in determining whether a statute or regulation is overly broad is to "construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Id.* at 293. The Supreme Court's decision in *In re Snyder,* 472 U.S. 634 (1985), provides helpful guidance. *In re Snyder* involved an attorney's letter to the Chief Judge of the Eighth Circuit complaining about the amount of money paid to court–appointed defense counsel in criminal manners, which resulted in his temporary suspension from practice for "conduct unbecoming a member of the bar" in violation of Federal Rule of Appellate Procedure 46(c). In considering whether this letter qualified as professional misconduct and whether his suspension violated the First

6

Amendment, the Supreme Court explained that because courts' "inherent authority to suspend or disbar lawyers . . . derives from the lawyer's role as an officer of the court which granted admission," limitations on lawyers' conduct "must be read in light of the 'complex code of behavior' to which attorneys are subject" and "the traditional duties imposed on an attorney." *Id.* at 634–35. "More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.*

Thus, Rules 8.4(3) and 8.4(4) will be construed in light of "traditional duties imposed on an attorney" and case law interpreting substantively identical rules. The official comment to Rule 8.4 states that "[a]lthough a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice." Connecticut state courts apply Connecticut Rules 8.4(3) and 8.4(4) in a manner consistent with "attorneys['] . . . special relationship with the judiciary." *Statewide Grievance Comm. v. Egbarin*, 61 Conn. App. 445, 451 (2001) (internal citations omitted); *see also, e.g.*, *Ansell v. Statewide Grievance Comm.*, 87 Conn. App. 376, 388 (2005) ("Rule 8.4 addresses conduct that indicate[s] lack of those characteristics relevant to law practice, including those involving dishonesty," and "[i]n that context a pattern of repeated offenses . . . can indicate indifference to legal obligation"); *Statewide Grievance Comm. v. Fountain*, 56 Conn. App. 375, 378 (2000) ("A court disciplining an attorney does so not to punish the attorney, but rather to safeguard the administration of justice and to protect the public from the misconduct or unfitness of those who are members of the legal profession.").

Pursuant to the guidance of *In re Snyder*, Rules 8.4(3) and 8.4(4), construed in light of "the traditional duties imposed on an attorney," do not lead to the extreme outcomes

7

Villeneuve suggests necessarily result. He argues that Rule 8.4(3) makes punishable *all* "dishonesty, fraud, deceit or misrepresentation," including conduct such as saying out loud that the "earth is less than 6,000 years old" and that "the sky is purple" or telling children about Santa Claus and the Easter Bunny. (Mem. Opp'n Fed. Mot. Dismiss [Doc. # 53] at 13.) Similarly, Villeneuve claims that Rule 8.4(4) is overbroad because it allows for the creation of other, as of yet undefined offenses against a tribunal or against the administration of justice, citing 2 G. Hazard & W. Hodes, *The Law of Lawyering*, § 65.5 (3d ed. sup. 2007), which observes that the rules have "problems of possible vagueness and overbreadth."

However, Rules 8.4(3) and 8.4(4), in light of the traditional roles of lawyers and in a manner relevant to law practice, do not reach a substantial amount of protected activity, if any, and potential overly–broad applications of the rules can be dealt with through as–applied challenges. The Fifth Circuit in *Howell v. State Bar of Texas* held that the Texas analogue for Rule 8.4(4), DR 1-102(A)(5), which provided in pertinent part that lawyers shall not "[e]ngage in conduct that is prejudicial to the administration of justice," did not reach a substantial amount of protected activity, in light of "Texas cases which both antedated and followed the adoption of DR 1-102(A)(5) [that] demonstrate quite clearly that the State's primary concern consistently has been with the obligations of lawyers in their quasi–official capacity as 'assistants to the court.'" 843 F.2d 205, 208 (5th Cir. 1988). Other state supreme courts have also held that neither Rule 8.4(3) nor Rule 8.4(4) is overbroad when viewed in a manner relevant to the legal profession. *See, e.g.*, *In re Comfort*, 284 Kan. 183, 206 (2007) (Kansas rule prohibiting conduct that interferes with administration of justice did not violate the First Amendment); *Rogers v. Mississippi Bar*, 731 So. 2d 1158 (Miss. 1999) (Mississippi

rules providing that it is professional misconduct for an attorney to "engage in conduct prejudicial to the administration of justice" and to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" are not overly broad when construed in light of comment to the rules that "a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice"). Likewise, because the federal Rules 8.4(3) and 8.4(4) in the District of Connecticut regulate conduct that is relevant to law practice, they are not unconstitutionally overbroad.

### 2. *Vagueness*

Villeneuve argues that even if Rules 8.4(3) and 8.4(4) are not unconstitutionally overbroad, they are void for vagueness. "As generally stated, the void–for–vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (internal citations omitted). Vagueness is an outgrowth of the Fifth Amendment Due Process Clause. *See Williams*, 553 U.S. at 304. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* Although ordinarily "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others," the Supreme Court "has relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of

9

protected speech." *Id.* "But 'perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.'" *Id.*

In arguing that these rules are unconstitutionally vague, Villeneuve reiterates the points he made in support of his claim of their overbreadth and adds that these rules are "so imprecise that discriminatory enforcement is a real possibility," citing *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051 (1991). Villeneuve notes that one of the rules' authors stated in an annotated commentary to the Connecticut Rules that language of Rule 8.4(3) is "broad and ambiguous," which Villeneuve says clearly reveals that it is vague. Villeneuve also contends that while "the rule is clear on its face, . . . the rule, as stated, is so unconstitutionally broad, that to enforce it to its full extent, and in a way that is not arbitrary and discriminatory, would constitute such absurd results as to disbar every attorney admitted in the country." (Mem. Opp'n Fed. Mot. Dismiss at 27.) As to Rule 8.4(4), Villeneuve points to a footnote in *O'Brien v. Superior Court*, observing that "[a]cademic commentators have identified a serious problem in the open textured provisions of rule 8.4(4). . . . '[Subsection 4] rais[ing] the specter of a disciplinary authority creating new offenses by common law, and perhaps harassing an unpopular lawyer through selective enforcement.'" 105 Conn. App. 774, 794 & n.22 (2008) (quoting 2 G. Hazard & W. Hodes, at § 65.6).

However, as the Fifth Circuit explained in *Howell*, these regulations "appl[y] only to lawyers, who are professionals and have the benefit of guidance provided by case law, court rules and the 'lore of the profession.'" 843 F.2d at 208. Although the plain text of the rules may lack precision and detail, it is clear from the rules, Official Comment, and case law interpreting substantively identical rules that the rules are limited to conduct that is relevant

to and based on the practice of law, and therefore lawyers are sufficiently on notice of what the rules proscribe. Thus, Villeneuve has failed to demonstrate that either rule is facially unconstitutional, and the Federal Defendants' motion to dismiss is granted.

B. State Defendants' Motion to Dismiss

The State Defendants move to dismiss Plaintiff's § 1983 claims as barred by the *Younger* abstention doctrine and ask the Court to decline supplemental jurisdiction over Plaintiff's remaining state–law claims. The *Younger* doctrine requires federal courts to abstain from exercising jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings. Although the *Younger* abstention doctrine was born in the context of state criminal proceedings, it now applies with equal force to state administrative proceedings, such as disciplinary proceedings. *See Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir 2002) (citing *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 627 (1986)). "This doctrine of federal abstention rests foursquare on the notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.'" *Id.* (internal citations omitted).

A federal court is required, under *Younger*, to abstain when three conditions are met: (1) there is an ongoing state proceeding; (2) an important state interest is implicated in that proceeding; and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims. *See id.* (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). Despite the strong policy in favor of abstention, a federal court may nevertheless intervene in a state proceeding upon a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Younger*, 401 U.S.

at 54. However, a plaintiff who opposes application of *Younger* abstention bears the burden of establishing that one of the exceptions applies. *See Kirschner v. Klemons*, 225 F.3d 227, 235–36 (2d Cir. 2000).

Villeneuve concedes the existence of an ongoing state proceeding and an important state interest implicated in that proceeding. He argues that the *Younger* doctrine does not apply because he has not had an opportunity to raise his constitutional claims before a competent tribunal, the rules the State is attempting to enforce are patently and flagrantly unconstitutional, and the State Defendants acted in bad faith and subjected him to a pattern and practice of harassment.

### 1. *Adequate Opportunity*

First, Villeneuve argues that *Younger* does not apply because he has not been provided an adequate opportunity to raise federal constitutional claims in state court. He notes that he argued before the Grievance Committee that Rules 8.4(3) and 8.4(4) are facially unconstitutional, but the Committee refused to address that argument on the basis that it did not have authority to make such a determination. He also maintains that his inability to attend the oral argument on his motion for summary judgment before Judge Aurigemma because of a significant snow storm, the "*ex parte*" communication between Judge Aurigemma and King at oral argument in his absence, and Judge Aurigemma's denial of his motion for summary judgment all reveal that he lacked an adequate opportunity to raise constitutional claims in state court, necessitating federal court action. Villeneuve also discusses at length what he perceives to be legal shortcomings with Judge Aurigemma's summary–judgment ruling, including her failure to "cite any case law that has any bearing

12

on the constitutionally of rules 8.4(3) and 8.4(4)." (Mem. Opp'n State Mot. Dismiss [Doc. # 30] at 10.)

However the relevant question under *Younger* is "whether the state's procedural remedies *could* provide the relief sought [not] . . . whether the state *will* provide the constitutional ruling which the plaintiff seeks." *Spargo*, 351 F.3d at 79 (emphasis in original). "[U]nless state law clearly bars the interposition of the constitutional claims," federal courts should wait until state processes have concluded. *Middlesex Cnty Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Additionally, "the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claim." *Penzoil Co. v. Texaco*, 481 U.S. 1, 14 (1987). Villeneuve conceded at oral argument that there is no such bar to raising a constitutional challenge to a rule of professional conduct in state court. Additionally, Villeneuve acknowledged that he has not yet exhausted state appellate opportunities to challenge the constitutionality of the rules, facially or as applied. "[A] necessary concomitant of *Younger* is that a party . . . must exhaust his state appellate remedies before seeking relief in District Court" because "it is typically a judicial system's appellate courts which are by their nature a litigant's most appropriate forum for the resolution of constitutional contentions," and a "State's judicial system would [not] be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608–09 (1975). Because there are no procedural bars to challenging the constitutionality of Rules 8.4(3) and 8.4(4) in state court and Plaintiff's appeal in state court remains pending, he has failed to demonstrate an inadequate opportunity to litigate his federal constitutional challenge to these state disciplinary rules, and *Younger* should preclude

13

this Court's jurisdiction over his claims of facial unconstitutionality of the Connecticut Rules of Professional Conduct.

### 2. Flagrantly and patently unconstitutional

Villeneuve also argues that Rules 8.4(3) and 8.4(4) are "flagrantly and patently unconstitutional," reiterating the arguments he made in support of his claim that the federal rules are facially unconstitutional. *Younger* does not apply "when a statute is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Diamond D*, 282 F.3d at 201. As discussed above, the federal analogues to Rules 8.4(3) and 8.4(4) are not facially unconstitutional, and substantively identical rules have been found constitutional. Therefore, Villeneuve has failed to demonstrate that Rules 8.4(3) and 8.4(4) are flagrantly and patently unconstitutional, and his claim of exception to *Younger* abstention is unavailing.

### 3. Bad faith

Villeneuve also asserts that *Younger* does not require the Court's abstention because he has been subject to bad faith and a pattern and practice of harassment. He cites as examples of bad faith that Attorney King filed the presentment alleging that Villeneuve violated Rule 8.4(4) even though the Grievance Committee was unable to conclude that he violated Rule 8.4(4); that King then filed a motion for a continuance in Superior Court without first contacting him for consent and a new date; that King and Judge Aurigemma engaged in communications at the hearing that Villeneuve did not attend as reflected on the record of proceedings; and that Judge Aurigemma "effectively denied" his right to appeal the

suspension by "refusing to provide the rule [Villeneuve] was found to violate." (Mem. Opp'n at 38.)

For a "federal plaintiff to invoke the bad faith exception [to the *Younger* doctrine], the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." *Diamond D*, 282 F.3d at 199 (internal citations omitted). "[T]he subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, [the bad faith] inquiry." *Id.* (citing *Schlager v. Phillips*, 166 F.3d 439, 442 (2d Cir. 1999). "A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id.* To invoke this exception, the federal plaintiff must show that the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive. *See Schlager*, 166 F.3d at 442–44. In *Diamond D*, in which the Diamond D company challenged in federal court the New York State Department of Labor's investigation and administrative action against it for underpayment of wages, the Second Circuit determined that Diamond D's complaints that the Department of Labor failed to schedule post–deprivation hearings and imposed overly strict withholdings, interest, and civil penalties went to the manner in which the administrative proceedings were conducted, not "the subjective intent of the DOL in commencing the prevailing wage proceedings." *Diamond D*, 282 F.3d at 200. Diamond D failed to demonstrate that the proceedings "were brought with an intent to harass or any other illegitimate motive," and therefore, the bad faith exception to *Younger* did not apply. *Id.* By contrast, in *Cullen v. Fliegner*, the Second Circuit held that the bad faith exception to *Younger* did apply where a teacher was disciplined after distributing leaflets opposing

15

re–election of school board members, and where the district court found that the "past history of personal conflict" between Cullen and the school board, and the "strictly *ad hominem*" manner in which the school board had disciplined him were sufficient to establish that the school board disciplinary proceeding was retaliatory in nature and calculated to chill exercise of First Amendment rights. 17 F.3d 96, 103 (2d Cir. 1994)

Like the challenged actions in *Diamond D*, King's decision to include in her presentment an allegation that Villeneuve violated Rule 8.4(4),[3] King's interactions with Judge Aurigemma at noticed hearings, and Judge Aurigemma's rulings that were adverse to Villeneuve reflect the manner in which administrative proceedings against Villeneuve were conducted, not King's or Aurigemma's subjective intent. The Grievance Committee initiated its review of Villeneuve, giving rise to the presentment proceedings, based on the complaint that Villeneuve lied about his qualifications and professional experience in an application for a job as a lawyer. Villeneuve has failed to demonstrate the existence of any evidence that any Defendants acted with *intent* to harass or had any other illegitimate motive. Therefore, the bad faith exception to the *Younger* doctrine does not apply.

---

[3] That the Grievance Committee cannot conclude that a rule was violated does not mean that such a violation cannot be presented to the Superior Court. In presentment proceedings, the Superior Court conducts a *de novo* trial, and "[t]he ultimate decision as to whether an act of misconduct had occurred reposed solely with the judge, as did the power to administer an appropriate sanction." *Statewide Grievance Comm. v. Presnick*, 215 Conn. 162, 167 (1990). Thus, "the presentment need not refer to specific sections of the Code of Professional Responsibility because, unlike criminal statutes, reference to specific rules does not constitute the only basis for a finding of guilt in attorney misconduct proceedings. Rather, reference to a specific rule simply assists the trial court in drawing its conclusions as to whether, under the totality of the circumstances, professional misconduct occurred." *Statewide Grievance Comm. v. Botwick*, 226 Conn. 299, 310 (1993). Therefore, the Grievance Committee's inability to determine whether that Villeneuve violated Rule 8.4(4) did not preclude King from including a reference to that rule in the presentment.

*4.    Bias*

Next, Villeneuve argues that the pending state court proceeding does not necessitate abstention because the state court is biased, which he says qualifies for the "exceptional circumstances" exception to *Younger*. As evidence of such bias, Villeneuve points to what he terms Judge Aurigemma's "*ex parte*" communications with Attorney King. The *ex parte* communications to which Villeneuve refers took place during the oral argument on his motion for summary judgment on December 21, 2009 that he failed to attend because of last–minute adverse weather conditions and the merits hearing on the disciplinary charges against Villeneuve held on January 22, 2010 that he also failed to attend. Villeneuve does not suggest he did not receive notice for either of these arguments; in fact, he says he intended to attend the December 21 oral argument but could not because of the weather.

An *ex parte* communication is "[d]one or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested." *United States v. Abreu*, 202 F.3d 386, 390 (1st Cir. 2000) (quoting *Black's Law Dictionary* 1221 (7th ed. 1999)); *see also Menillo v. Comm'n Human Rights & Opportunities*, 47 Conn. App. 325, 330 (1997) ("[T]he essence of an *ex parte* communication is that the other party has no notice or opportunity to participate in the presentation of allegations to the fact finder."). Villeneuve does not deny that he had notice and an opportunity to be heard by written briefing. These "*ex parte* communications" are insufficient to demonstrate bias and exemption of his federal–law claims from *Younger* abstention.

C.    State law claims

Having dismissed Plaintiff's federal–law claims, the Court declines to exercise supplemental jurisdiction over the state–law claims. "While the statute governing

17

supplemental jurisdiction, 28 U.S.C. § 1367, does not require dismissal of pendent state–law claims where all of the federal claims have been dismissed, *see id.* § 1367(c)(3)," *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir.2001) (collecting cases), the Second Circuit "has held, as a general proposition, that 'if [all] federal claims are dismissed before trial . . ., the state claims should be dismissed as well,'" *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726(1966)) (alteration in *Uzan*).

> D. Motion to Amend

Villeneuve also moves [Doc. # 41] to amend his Complaint under Rule 15(a)(2) to add a count charging that the Connecticut Supreme Court's decision in *Statewide Grievance Committee v. Rozbicki*, 219 Conn. 473, 477 (1991), which Judge Aurigemma cited in suspending his license, is flagrantly and patently overbroad and vague in its holding that "[t]he rules do not, however, exhaust the moral and ethical considerations that should inform a . . . a lawyer [but] simply provide a framework for the ethical practice of law. Thus, courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice."

After a defendant has answered a complaint, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may properly deny a motion to amend when it finds that amendment would be futile." *Patane v. Clark*, 508 F.3d 106, 113 n. 6 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Among other problems with Villeneuve's proposed claim that a Connecticut Supreme Court decision in

a case in which he was not a party was unconstitutional, such an argument is also precluded by *Younger* and is therefore futile.

Villeneuve claims that he lacked an opportunity to question the constitutionality of the *Rozbicki* decision, because Judge Aurigemma cited it in the articulation she issued *after* he appealed. However, as discussed above, "unless state law clearly bars the interposition of constitutional claims," inadequate opportunity does not constitute an exception to *Younger*. *Middlesex Cnty Ethics Comm.*, 457 U.S. at 432. State law does not bar the interposition of claims that a decision in a prior case was contrary to constitutional principles. Villeneuve also argues that the *Rozbicki* holding creates a facially unconstitutional rule. However, this exception to *Younger* is available "when a state *statute* is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph," *Diamond D*, 282 F.3d at 201 (emphasis added), and not when what is sought is to overrule a prior state–court decision. None of the *Younger* exceptions applies, and for the same reasons that the Court lacks jurisdiction over Villeneuve's federal constitutional claims, there would be no jurisdiction over the claim Villeneuve seeks to add, and therefore, his motion to amend is denied.

III.     Conclusion

Accordingly, Plaintiff's [Doc. # 41] Motion to Amend is DENIED, the State Defendants' [Doc. # 25] Motion to Dismiss is GRANTED, and the Federal Defendants' [Doc. # 44] Motion to Dismiss is GRANTED.  The Clerk is directed to close the case.


IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 2nd day of December, 2010.